Jane Denise Beck EZELL, John Thomas Beck, Jr., Gene Reta Beck Bledsoe, and Bradford Barner Beck, Plaintiffs-Appellees,

v.

James F. FLETCHER and Winnie W. Fletcher, Defendants and Third-Party Plaintiffs-Appellants,

v.

George B. DICKEY, James E. Dickey, AAA Electrical Services, Inc., Ida Sue Dickey, and White Electric Company, Third-Party Defendants-Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

Oct. 19, 1982.

Application for Permission to Appeal Denied by Supreme Court April 4, 1983.

David E. Caywood, Memphis, for plaintiffs-appellees.

Robert L. Taylor and William D. Marshall, Memphis, for defendants and third-party plaintiffs-appellants.

James W. Watson, Memphis, for third-party defendant-appellee, Ida Sue Dickey.

CRAWFORD, Judge.

The trial court, sitting without a jury, held in favor of the original plaintiffs for the relief prayed in the original Complaint. The Court also held in favor of the third-party defendants on the relief prayed in the Third-Party Complaint by the original defendants. The original defendants and third party plaintiffs have appealed to this court. While there seems to be a dispute as to what the issues on appeal are, a reading of the respective positions of the parties indicates that the issues are:

1. Whether the original defendants and third-party plaintiffs proved that they sustained damages as a direct and proximate result of any actions of either or both of third-party defendants, George Dickey and Ida Sue Dickey; and

2. Who is entitled to possession of certain Puerto Rican sugar bonds which were assets of a trust and which the trustee, Ida Sue Dickey, pledged as security.

It is apparent from the outset that the appellants' main thrust in this appeal is against the third-party defendant, Ida Sue Dickey. After the trial proceedings, the third-party defendant, George Dickey, was not represented by counsel nor did he otherwise participate in this appeal.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

This suit was initiated by the filing of a Complaint by the children of the third-party defendant, Ida Sue Dickey, in which the children alleged that they were beneficiaries of a trust which owned certain stocks and bonds and which was administered by the third-party defendant, Ida Sue Dickey, as the trustee. The Complaint alleged that the trustee, without the knowledge, consent or approval of the beneficiaries, entered into a Stock Sale Pledge Agreement pledging certain stocks and bonds as security for

an obligation of AAA Electrical Services, Inc., to the defendants, the Fletchers. The Complaint alleged that the trustee had no power or authority to pledge the stocks and bonds and that the Fletchers had full notice and knowledge of the fact because the restriction on her authority was shown on the face of the securities themselves. The original Complaint prayed for the return of the stocks and bonds as relief.

The defendants, James F. Fletcher and Winnie W. Fletcher, filed an answer to the original Complaint and what they denominated a cross-complaint but which in reality was probably a third-party complaint. In the answer they denied having any knowledge of the allegation concerning the ownership of the stocks and bonds, and they denied that the said stocks and bonds were the property of a bona fide trust. The Fletchers contended that they were actually the property of the third-party defendant, Ida Sue Dickey.

By way of cross-claim, the said defendants brought in George B. Dickey, James E. Dickey, Ida Sue Dickey, AAA Electrical Services, and White Electric Company as cross-defendants based on their alleged participation in the contract of sale for which the disputed bonds and stocks were pledged as security. A nonsuit was later taken as to AAA Electrical Services, Inc., and James E. Dickey. The status of White Electric Company is unclear, but in any event, the appellants made no issue or otherwise pursued White Electric Company in their appeal.

The cross-complaint alleged in substance that George Dickey advised James F. Fletcher in the spring of 1976 that he wanted to buy the stock of the James F. Fletcher Electric and Engineering Corporation. Fletcher claimed Dickey told him that his new wife owned property worth over $21,000,000 and that she was going to back him financially. The parties then allegedly reached an agreement which provided in essence that AAA Electrical Services, Inc., would buy all the stock of Fletcher Electric and Engineering Corporation in exchange for a certain amount of cash as well as a series of deferred payments evidenced by a

promissory note. The Fletchers claimed that although the terms of the agreement had been resolved prior to June 1, 1976, a Stock Sale and Pledge Agreement was not executed by the parties until August 9, 1976. Checks were issued by AAA Electrical Services, Inc., as the cash downpayment, but these checks were returned for insufficient funds.

The cross-complaint also alleged that George Dickey had four contracts for electrical work which he could not complete and that Fletcher Electric agreed to furnish the labor and material necessary to complete these contracts in anticipation of closing the June 1, 1976 oral agreement. The Fletchers alleged that commencing on June 1, 1976, the employees of Dickey were put on Fletcher Electric's payroll and that Fletcher advanced various sums for labor and materials which were in excess of the amounts received in payment for the services and materials. Moreover, the corporation's operating capital was now allegedly exhausted.

Fletcher Electric has since recovered an additional amount from a bonding company on performance bonds for work to be done on the four contracts by White Electric. The Fletchers contended that because of the "fraud" allegedly perpetrated upon them by the cross-defendants and based on the value of the stock, their net worth has been reduced by the sum of $60,430.94. The cross-complaint alleged that the cross-plaintiffs were further damaged because they had been unable to conduct their business in a profitable manner and that they had incurred damages by reason of attorneys' fees, accountants' fees and interest on loans.

Answers were filed by the cross-defendants, George B. Dickey, James E. Dickey and AAA Electrical Services, Inc., joining issue on the allegations of the cross-complaint.

An answer was filed by Ida Sue Dickey in which she denied the allegations against her. She also denied that she played any part in instigating the purchase of the stock of Fletcher Electric Company. Mrs. Dickey claimed that her sole participation in the matter was the signing of an agreement as secretary of AAA and the pledging of certain stocks and bonds as security for the promissory notes issued by AAA Electric. In that connection, she claimed that she was a guarantor for the notes only, and that subsequent to the execution of same, the Fletchers rescinded the transaction and resumed or continued in fact to operate Fletcher Electric Company, thus, terminating Mrs. Dickey's obligation to the Fletchers.

The proof established that for some time prior to June of 1976, George Dickey was engaged in an electrical contracting business which was operating under the name of White Electric Company. White Electric apparently had become financially embarrassed and was in a great deal of trouble concerning income tax withholding funds in addition to its other problems.

In April, 1976, George Dickey and the former Ida Sue Beck were married and shortly thereafter Mr. Dickey and Mr. Fletcher, who had been acquainted for some time, discussed Dickey's purchase of the stock of Fletcher Electric Company which was owned by Fletcher and his wife. According to Fletcher's testimony, George Dickey represented in the negotiations for the purchase of Fletcher Electric that Mrs. Dickey was worth 21 million dollars and that she would back him. Mrs. Dickey testified that her holdings did not approach that figure. Nevertheless, Fletcher testified that he relied on her backing the sale before he agreed to sell his business. George Dickey did not testify.

In June, 1976, Dickey's former employees at White started working for Fletcher Electric Company, and Fletcher Electric Company took over various jobs previously being performed by White Electric Company. White had been in the process of completing some four jobs, and Fletcher took these over to complete them pursuant to the oral agreement between Fletcher and Dickey. In addition, service work continued to be required on completed jobs, and Fletcher Electric undertook performance of these duties as well. In connection with this work, Fletcher Electric paid the employees, purchased the material and collected the

sums due, with George Dickey working in a supervisory capacity. This arrangement ended on or about October 10, 1976.

The only agreement that the Fletchers had with the defendant, Ida Sue Dickey, was the agreement signed August 9, 1976. The involvement of Ida Sue Dickey in the agreement was as guarantor for the promissory notes executed for the deferred part of the purchase price.

The Stock Sale and Pledge Agreement was signed on August 9, 1976, and the Fletchers knew the next day that the checks issued for the cash payment were not good. George Dickey never took over the management of Fletcher Electric and Engineering Corporation, although he worked in a supervisory capacity with the Fletchers as they continued to manage the business. The Fletcher Electric and Engineering Corporation stock owned by the Fletchers never actually left their hands, because it was pledged by AAA Electrical Services, Inc., as security for the deferred payments. This stock was subsequently reissued to the Fletchers, since the Fletchers considered the transaction rescinded.

The Puerto Rican sugar bonds were pledged as security in connection with the agreement of August 9, 1976. In September of 1976, due to the financial condition of Fletcher Electric and Engineering Corporation, a loan was sought. To secure the loan, Mr. Fletcher had Ida Sue Dickey sign a pledge agreement to the National Bank of Commerce turning the bonds over to the bank. The bonds have remained there to the present.

As to the proof of damages, Fletcher seems to contend that he is entitled to the difference between the amount charged for service work performed and the amount actually received by Fletcher Electric Company for the service work. This claim was apparently based on the work performed after Fletcher took over the service work of White Electric Company. A list was introduced as an exhibit setting out the labor, materials and other expenses, the receipts to Fletcher Electric Company, and a balance due of some $60,430.94. Another list was introduced as an exhibit which alluded to the fact that receipts were collected for certain work by George Dickey totalling $74,145.51.

It is not clear exactly what claims were made by the cross-plaintiffs, the Fletchers, but the proof established that the Fletchers grounded their contention on amounts paid on the White Electric Company payroll commencing June 1, 1976. The record simply does not reflect any evidence of damage sustained by virtue of the breach of the contract of August 9, 1976. Counsel for the Fletchers conceded in the record that Ida Sue Dickey could not be held under the pledge agreement, and that they made no claim against her on the notes or the pledge agreement.

Although the allegations lack clarity, the Fletchers apparently contended that they assumed White Electric Company's contracts only in anticipation of and in reliance on George Dickey's performance of the oral agreement of June 1, 1976, to purchase Fletcher Electric. Mr. Fletcher testified that Dickey continually balked at executing the agreement and closing the deal. The oral agreement ultimately became part of the August 9 contract which Dickey immediately breached by failing to pay the Fletchers the agreed cash downpayment with a valid check.

The Trial Court found for Dickey on this claim, simply stating that the Fletchers' proof was speculative. The court did not specify whether its finding was that the Fletchers' evidence was speculative as to the amount of damages or that the evidence was speculative as to the causation by Dickey. See Acuff v. Vinsant, 59 Tenn.App. 727, 737, 443 S.W.2d 669, 674 (1969), where the distinction between the speculative nature of causation of damages and the amount of damages was made by the Court of Appeals for the Western Section. The evidence does not establish that the Dickeys caused the losses alleged by the Fletchers.

■ We are of the opinion that the evidence does not preponderate against the judgment of the Chancellor in regard to the claims of the Fletchers against the Dickeys. Therefore, that part of the judgment is affirmed.

As to the judgment of the Chancellor concerning the securities involved in the original Complaint, the evidence established that the Fletchers' attorney handled the matter entirely for the parties and was familiar from the beginning with the certificates and the situation of the parties. All of the details of the transaction including the paper-work and the agreements were handled by the attorney.

The record established that the stock certificates very plainly showed that they were held by Mrs. Dickey as trustee. It was established by the proof that both the stock certificates and the Puerto Rican sugar bonds were trust property and that Ida Sue Dickey was trustee. In addition, Ida Sue Dickey was the holder of a life estate of one-half the income of the trust with no right or authority to pledge the trust assets as she did. The decision of the Chancellor in regard to these securities is supported by the evidence and is affirmed.

The costs are adjudged against the appellants for which execution may issue if necessary.

NEARN, P.J., and TOMLIN, J., concur.